JOSEPH BEGIN'S CASE.

Suffolk.    May 9, 1968. — July 1, 1968.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Workmen's Compensation Act,* Injuries to which act applies, "Personal injury," Illness. *Evidence,* Cross-examination.

Emotional disturbance and an "acute anxiety state" suffered by a correction officer as a result of his employment at an institution for the criminally insane and sex offenders was not a "personal injury" within the Workmen's Compensation Act and was not compensable thereunder. [596–597]

It was prejudicial error in a workmen's compensation case for the single member to refuse to enforce the insurer's right, on cross-examination of a medical witness for the employee, to examine records and notes to which the witness had referred and upon which he had relied in direct examination, and to leave it to his "discretion" whether he would surrender them for inspection by the insurer, which he refused to do. [597]

CERTIFICATION to the Superior Court of a decision of the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Chmielinski,* J.

*Leonard Glazer,* Special Assistant Attorney General (*Paul F. X. Powers,* Assistant Attorney General, with him), for the Commonwealth.

*Paul J. McCawley* for the employee.

REARDON, J.    In this workmen's compensation case the single member awarded compensation to the employee and

the reviewing board adopted and affirmed the single member's decision. The Commonwealth of Massachusetts, the self-insurer, appealed from a final decree of the Superior Court upholding the decision of the reviewing board.

The employee in his claim stated that he sustained his injury on May 18, 1962, and that it consisted of emotional disturbance caused by association with the criminally insane. He had commenced work as a correction officer at the correctional institution at Bridgewater on December 1, 1958. During his employment there he witnessed incidents involving inmates which upset him emotionally. He recounted unpleasant and repelling experiences occurring during his work while guarding criminally insane individuals and those who had committed sex violations. Several weeks before he terminated his employment at the institution he saw his doctor for a variety of ailments which he ascribed to his work and tranquilizers were prescribed for him. He had taken to drinking heavily and was truculent and abusive toward his family at home. Ten days after leaving his work at Bridgewater he first saw a psychiatrist who took a history from him and diagnosed his condition as an "acute anxiety state." The employee testified that he had experienced no emotional problems prior to going to Bridgewater and the psychiatrist who treated him gave evidence that the etiology of his illness commenced during his service at that institution. The psychiatrist described the employee as a highly sensitive individual who never should have sought employment in such a position, and said that his personality was not such as to justify his daily labor in a situation where acts of violence were not uncommon. The employee had described to him symptoms of palpitation, stomach trouble, and nausea, but the psychiatrist stated that the employee was not in his opinion suffering from a "traumatic neurosis" which he defined as trauma connected "with some type of impact."

On the second day of hearing, which took place eleven months after the first day, counsel for the Commonwealth sought upon cross-examination of the psychiatrist to examine

the records and notes to which the doctor had referred while giving testimony on direct examination. After some colloquy with the single member and counsel, and a reiterated request from counsel for the Commonwealth, the doctor answered, "I refuse, sir." Thereupon the single member stated that he would leave the question of whether the notes would be made available to "the doctor's discretion in view of the fact that in this type of case we are dealing with very personalized notes . . . ." The Commonwealth excepted to this ruling and presses that exception here. The Commonwealth also complains about the refusal of the single member on the second day of hearing to allow counsel to review the history given to the psychiatrist by the employee. In view of our disposition of this matter we shall not pass upon this last complaint.

1. The Commonwealth's principal argument is directed to that portion of the decision upholding the employee's claim that he sustained a personal injury arising out of and in the course of his employment. The Commonwealth argues that while the psychiatrist testified that the employee's work at the correctional institution was the causative factor of his illness which was severe and prolonged, in fact that employment was a condition rather than a cause, and that the doctor had treated many guards "but not for this sort of thing." The Commonwealth further claims that the doctor's opinion was speculative in that it was based in large measure on the employee's contact with the more violently insane persons held in custody in a certain unit while the employment records of the employee indicate he had worked in that unit but one day in the latest five month period. However, we do not pass upon these contentions but move to a consideration of whether, assuming the existence of a causal relationship between the employment and the illness, the illness constituted a "personal injury" under the act. The Commonwealth has invited our attention to *Maggelet's Case*, 228 Mass. 57, which denied compensation for an "occupational neurosis." The court said at pages 61–62, "The act affords no relief against general disease.

It is not a scheme for health insurance. It deals only with personal injuries following as an immediate result from the employment as its direct cause. . . . A disease of mind or body which arises in the course of employment, with nothing more, is not within the act." The foregoing definition has been followed in a series of cases. In *Smith's Case*, 307 Mass. 516, for instance, an employee contracted tuberculosis while employed in a hospital for contagious diseases with tubercular patients. In a full discussion of the problem presented by the case and similar to that presented here, Mr. Justice Lummus pointed out that "disease unaccompanied by personal injury is not compensable under the workmen's compensation act." P. 518. But see G. L. c. 152, § 1 (7A); *Perron's Case*, 325 Mass. 6. See also *Pimental's Case*, 235 Mass. 598, 602; *Reardon's Case*, 275 Mass. 24, 27; *Mercier's Case*, 315 Mass. 238, 240. We are not disposed to vary the doctrine of those cases which have followed the principles elucidated in *Maggelet's Case*. Any change in those principles should come through legislative, not judicial, intervention. We thus conclude that the illness suffered by the employee was not a "personal injury" within the meaning of the act. See *Korsun's Case, ante,* 124, 126–127. Cf. *Charon's Case*, 321 Mass. 694; *Egan's Case*, 331 Mass. 11.

2. While what has already been stated is dispositive of this claim, we wish also to comment upon the ruling which denied to counsel for the Commonwealth his right on cross-examination to examine the records and notes of the medical witness to which that witness had referred and upon which the witness relied in direct examination. This was a ruling which was highly prejudicial, which might have affected substantial rights of the Commonwealth, and which would have been sufficient in itself to warrant reversal. The error was compounded by the ruling that the single member would leave it to "the discretion" of the witness whether or not he would surrender his notes for inspection by counsel engaged in cross-examination. What is involved here is so elementary that no further discussion is required. *Capodilupo* v. *F. W. Stock & Sons*, 237 Mass. 550, 551.

*Bendett* v. *Bendett,* 315 Mass. 59, 62. *Leonard* v. *Taylor,* 315 Mass. 580, 583. *Commonwealth* v. *Greenberg,* 339 Mass. 557, 581.

The-decree is reversed and a decree is to be entered in favor of the Commonwealth.

*So ordered.*