JOSEPH ALBANESE'S CASE.

Suffolk. February 5, 1979. — May 4, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & ABRAMS, JJ.

*Workmen's Compensation Act*, Injuries to which act applies, Emotional distress. *Words*, "Personal injury."

An employee who is incapacitated by a mental or emotional disorder causally related to a series of specific stressful work-related incidents is entitled to workmen's compensation under G. L. c. 152. [16-19]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Doerfer*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Gerard R. Kineen* for the insurer.

*Laurence S. Locke (Donald N. Freedman* with him) for the employee.

ABRAMS, J. The question presented is whether a mental or emotional disorder[1] causally related to stressful incidents at work is a "personal injury arising out of and in the course of . . . employment" under the Workmen's Compensation Act, G. L. c. 152, § 26. We hold that if an employee is incapacitated by a mental or emotional disor-

---

[1] The term "mental or emotional disorder" is used in a general sense and is intended neither to convey a precise medical meaning nor to provide in itself a basis for limitation or extension of the type of injury deemed compensable under the Workmen's Compensation Act, G. L. c. 152. Accord, *Deziel* v. *Difco Laboratories, Inc.*, 403 Mich. 1, 9 n.1, 23 n.8 (1978). See also 1A A. Larson, Workmen's Compensation § 42.20 (1973).

der causally related to a series of specific stressful work-related incidents, the employee is entitled to compensation.

The reviewing board found that Joseph Albanese was totally disabled as a result of his mental illness, and that his illness was related to a series of emotionally stressful work-related incidents. However, the board concluded "that as a matter of law the illnesses set forth above in these circumstances do not constitute a 'personal injury' under the Massachusetts Workmen's Compensation Act."

Albanese appealed to the Superior Court, where the judge ruled that he was entitled to compensation under G. L. c. 152. The insurer appealed from the judgment entered in the Superior Court.[2] We transferred the case sua sponte from the Appeals Court. We affirm the judgment of the Superior Court.

We summarize the facts as found by the board. The claimant, Joseph Albanese, was employed as a "working foreman" by Atlantic Steel Co., Inc., for approximately twenty years prior to 1970. His duties included the supervision of shipping as well as the supervision of certain activities of the plant's employees. In 1967 the business was sold to a new owner and thereafter attempts to unionize the employees were commenced.

---

[2] The insurer argues that we must accept the factual findings of the board, and not the facts set forth by the judge in his opinion. We agree. "It is well settled that . . .'[i]t is the exclusive function of the board to consider and weigh the evidence and to ascertain and settle the facts.' " *McEwen's Case*, 369 Mass. 851, 853 (1976), quoting from *Chapman's Case*, 321 Mass. 705, 707 (1947). The judge erred in finding facts which differed from the factual findings made by the board. See G. L. c. 152, § 11. See also *Ritchie's Case*, 351 Mass. 495, 496 (1966); *DiGiovanni's Case*, 255 Mass. 241, 242 (1926). Cf. Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974), which applies if the judge is to find the facts. The error, however, is harmless since the judgment entered contained no facts and is correct based on the board's findings. We consider the judge's "Opinion and Order for Judgment" as a memorandum of decision containing the reasons for his rulings. We disregard the judge's findings of fact.

In 1969, the employees voted to unionize, and friction developed between Albanese as working foreman and the workers. Part of the friction was caused by the management's decision to eliminate overtime work, which frequently "required [Albanese] to go out into the shop and prod the men to expedite the work."

Additional friction between Albanese and the men resulted from the activities of Albanese's direct supervisor, the plant manager. On one occasion in 1968, the manager informed Albanese that the company practice of distributing Thanksgiving turkeys was to be discontinued. On a second occasion, the manager told Albanese that the company did not intend to give the workers a Christmas bonus in 1969. On each occasion, after Albanese relayed this information to the workers, the plant manager reversed his own decision. Albanese viewed these incidents as humiliating, and felt that the manager was intentionally attempting to undermine Albanese's relationship with the workers.

On April 17, 1970, Albanese became involved in a "heated argument" with one of the workers over the question whether the worker was entitled to overtime pay. The plant manager informed Albanese that the company did not intend to pay any overtime wages to the worker involved.

Five days later, a meeting was held to discuss the worker's overtime pay. Albanese, the plant manager, the worker, and the union agent attended the meeting. After another "heated discussion," the manager ordered Albanese to give the overtime pay to the worker. When this occurred, Albanese "became distressed, developed chest pains, nausea, and went into the conference room where he laid down for ten minutes. When the chest pains got sharper he went home to bed. . . . [Albanese] has not worked since and has experienced continuing complaints of pains, sweatiness, shortness of breath, headaches, and depression." His condition has been diagnosed as "a chronic anxiety state mixed with depression and somatized reaction and . . . neurocirculatory asthenia."

Albanese filed a claim under the Workmen's Compensation Act on July 28, 1970. The single member decided that Albanese was entitled to compensation; the reviewing board reversed the decision of the single member and denied Albanese's claim as a matter of law. The board's decision was reversed by the Superior Court.

On appeal, the insurer does not dispute the fact that Albanese has become disabled as a result of a mental or emotional disorder, but argues that Albanese's condition is the result of gradual "wear and tear" and thus is not a compensable personal injury under the statute as interpreted by this court. *Spalla's Case,* 320 Mass. 416, 418 (1946). See *Begin's Case,* 354 Mass. 594, 596-597 (1968);[3] *Maggelet's Case,* 228 Mass. 57, 61 (1917). But cf. 1968 Ann. Survey Mass. Law 413-415.

However, subsequent to the board's decision and to the proceedings in the Superior Court we held that "the term 'personal injury' also permits compensation in cases involving mental disorders or disabilities causally connected to mental trauma or shock arising 'out of the employment looked at in any of its aspects.' . . . There is no valid distinction which would preclude mental or emotional disorders caused by mental or emotional trauma from being compensable." *Fitzgibbons's Case,* 374 Mass. 633, 637-638 (1978), quoting from *Caswell's Case,* 305 Mass. 500, 502 (1940).

The insurer concedes that "the lack of a sudden episode does not of itself disqualify an employee's claim for personal injury." See, e.g., *Trombetta's Case,* 1 Mass. App. Ct. 102, 105 (1973). Instead, the insurer argues that *Fitzgib-*

---

[3] The board originally relied on *Begin's Case,* 354 Mass. 594 (1968), for its conclusion that Albanese's illness did not constitute a personal injury within the meaning of the Workmen's Compensation Act. On recommittal, the board struck the final page of its Findings and Decision and substituted two additional pages which concluded that "as a matter of law" Albanese's illness did not constitute a personal injury. However, the substituted pages did not cite *Begin's Case.* Thus it is unclear whether the board relied on *Begin's Case* in its final decision.

*bons* is inapplicable because in Albanese's case there is no evidence of shock or stress greater than ordinary and hence Albanese's disability is solely the result of general wear and tear.

Contrary to the insurer's claim of general wear and tear, the board did not find that Albanese's injury was the result of general stress or the wear and tear of working. The reviewing board found as fact both the existence of a series of specific stressful episodes and a causal nexus between Albanese's working conditions and his emotional disorder. Thus his injury is not "[a] disease of mind or body which arises in the course of employment, with nothing more, [and which] is not within the act." *Begin's Case, supra* at 597, quoting from *Maggelet's Case, supra* at 61.[4]

Based on the board's findings, we conclude that Albanese's injury was not the result of everyday stress or "[b]odily wear and tear resulting from a long period of hard work." *Spalla's Case, supra* at 418. Rather, it resulted from a series of identifiable stressful work-related incidents occurring over a relatively brief period of time,

---

[4] There is no issue before us as to whether an employee's mental disorder caused by the general stress of his working conditions is a compensable personal injury without proof of specific, stressful work-related incidents. Thus we do not consider Albanese's claim that he would also be entitled to compensation in the absence of any specific stressful incidents. See *Murray* v. *T. W. Dick Co.*, 398 A.2d 390, 392 (Me. 1979); *Carter* v. *General Motors Corp.*, 361 Mich. 577, 593 (1960). See also *Baker* v. *Workmen's Compensation Appeals Bd.*, 18 Cal. App. 3d 852, 861-862 (1971); *Royal State Nat'l Ins. Co.* v. *Labor & Indus. Relations Appeal Bd.*, 53 Haw. 32, 37-39 (1971). Cf. *American Nat'l Red Cross* v. *Hagen*, 327 F.2d 559, 560 (7th Cir. 1964) (mental break caused by stress of working conditions compensable under Longshoremen's Act); *Sloss* v. *Industrial Comm'n*, 121 Ariz. 10, 11 (1978) ("To qualify as an injury by accident, [a disabling neurosis] must have been produced by the unexpected, the unusual, or the extraordinary stress"); *Swiss Colony, Inc.* v. *Department of Indus., Labor & Human Relations*, 72 Wis. 2d 46, 51 (1976). See generally Manson, Workmen's Compensation and the Disabling Neurosis, 11 Buffalo L. Rev. 376, 386-387 (1962); 1A A. Larson, Workmen's Compensation § 42.23 (1973). But cf. *Begin's Case*, 354 Mass. 594, 596-597 (1968).

compared with his twenty-year employment. Compare *Begin's Case, supra* at 595 (where the individual was unsuited to his work from the beginning). Therefore, Albanese is entitled to workmen's compensation for his disability. See *Fitzgibbons's Case, supra* at 638.

The judgment of the Superior Court is affirmed. Costs and expenses of appeal shall be allowed by a single justice. See *Fitzgibbons's Case, supra* at 640; *Joyce's Case,* 350 Mass. 77, 82 (1966).

*So ordered.*