George W. PACKISH, et al.,
Plaintiffs, Appellants,

v.

Heather McMURTRIE, et al.,
Defendants, Appellees.

No. 82–1586.

United States Court of Appeals,
First Circuit.

Argued Dec. 6, 1982.
Decided Jan. 11, 1983.

Donald J. Fleming, Mattapoisett, Mass., for appellants.

Edward W. Farrell, Falmouth, Mass., for appellees.

Before CAMPBELL and BREYER, Circuit Judges, and SMITH,* Senior District Judge.

PER CURIAM.

In this section 1983 action, George and Janet Packish seek to recover damages for emotional distress resulting from the defendants' initial refusal to indemnify George for certain medical expenses. They assert that George's application was denied in retaliation for the Packishes' exercise of their first amendment rights and that the denial deprived George of property without due process. They each seek $15,000 in compensatory and $5,000 in punitive damages. The district court granted the defendants' motion for summary judgment and denied plaintiffs' motion for a rehearing. 539 F.Supp. 548. We affirm.

George Packish is a captain in the Ashburnham Fire Department. In June 1978 his brother-in-law received a promotion to Fire Chief that George had also sought. George's wife, Janet, thereupon wrote to the local newspaper complaining that the selection process had been unfair. George wrote a similar letter a week later. Both letters were published, as was a short article describing the controversy.

In the fall of 1978 George began to suffer back pains—a problem he had had off and on since falling on the job in 1970. The pain was apparently "triggered by a sneeze" while George was driving. In October he filed a claim with the town's insurance carrier under what is essentially a worker's compensation policy. The company denied the claim on the ground that the injury was a recurrence, rather than an aggravation, of the prior injury. The pain

* Of the District of Montana, sitting by designation.

continued, and George was hospitalized briefly in early 1980. After the insurance company denied the claim, George sought indemnification from the town for his medical expenses, pursuant to Mass.Gen.Laws ch. 41, § 100. That provision authorizes a town to determine if it "is appropriate under all the circumstances" to indemnify a firefighter for medical expenses incurred as a result of a work-related injury. George also sought to have his missed work days treated as injury leave rather than sick days. *See id.* § 111F. The Selectmen denied indemnification on November 14, 1979. Prior to that denial, in April, the firefighters' union had filed a grievance on George's behalf before the State Board of Conciliation and Arbitration. On February 6, 1980, after the town missed a deadline in the grievance process, the Board found that the town had defaulted and ordered it to make George whole—an order with which the town has complied.

Plaintiffs thereafter brought this suit seeking damages for the emotional distress caused by the Selectmen's allegedly groundless, improperly motivated denial of George's claim for indemnification. The district court found that Janet had presented no justiciable claim; that George had no protected property interest in indemnification; and that even if George had such an interest, due process requirements were satisfied.[1]

### A. The Due Process Claim

In their complaint, plaintiffs asserted that the Selectmen's actions "were done to deprive the said George W. Packish of due process of law and his property rights granted to him under" the Massachusetts statute. It is unclear if they are pressing this claim on appeal. In any event, we are essentially in agreement with the district court's disposition of this claim. There can be no due process violation if there is no protected property interest.

*Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Here the statute grants the town discretion to determine not only whether the injury was work related, but whether indemnification is "appropriate under all the circumstances." Indemnification would therefore not amount to an "entitlement," particularly where the applicant was not at the time receiving any benefits. *See Greenholtz v. Inmates of the Nebraska Penal & Correction Complex,* 442 U.S. 1, 7, 11–12, 99 S.Ct. 2100, 2105–2106, 60 L.Ed.2d 668 (1979); *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Indeed, even if we were to assume that George did have a protected property interest, it was not deprived without due process. George ultimately received a hearing, and indemnification. Thus his claim, at best, can only be that the Selectmen's *initial* procedures were inadequate and resulted in an unconstitutional delay. But any such claim is clearly without merit. If a prior hearing is not necessary when disability benefits are terminated, *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), certainly an immediate hearing is not required for the denial of an initial application. *See id.; see also Greenholtz,* 442 U.S. at 10, 99 S.Ct. at 2105; Friendly, *"Some Kind of Hearing,"* 123 U.Pa.L.Rev. 1267, 1296 (1975) (noting "difference between losing what one has and not getting what one wants").

### B. The First Amendment Claim

While the Selectmen had discretion with regard to indemnification, they could not refuse a claim in retaliation for the exercise of first amendment rights. The Supreme Court stated in *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 283–84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977), that although the plaintiff school teacher "could have been discharged for no reason whatsoever, and had no constitutional right to a hearing prior to

---

1. Appellants argue that the district court could not award summary judgment on these grounds because they were not raised in defendants' motion. However, if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law, the particular legal argument relied on by the court need not have been suggested by the movant. *E.g.,* 10 Wright & Miller, *Federal Practice & Procedure: Civil* § 2725 at 518 (1973).

the decision not to rehire him, he may nonetheless establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedoms." (Citations omitted.) Thus, George and Janet might have viable claims if they could in fact demonstrate that George was denied indemnification in retaliation for their having written letters to the newspaper.[2]

▮ A review of the record, however, reveals almost nothing to support appellants' version of the facts other than their own bald assertions. In opposing the motion for summary judgment, appellants produced Janet's affidavit, an independent doctor's report, and a copy of the decision of the Arbitration Board. The affidavit simply states that the refusal to pay was an effort to punish the Packishes for their letters. The only support for this naked assertion is a conversation between Janet and defendant McMurtrie, in which the latter stated that the Selectmen knew the claim was valid "but had no idea how they were going to pay it." This would suggest that the Selectmen were motivated by inadequate funds rather than pique. The doctor's report, which was requested by and presented to the Selectmen, adds little. It states that the "disc problem does appear to be injury related," but also notes that 1979 was the first time George had had left rather than right sciatic pain, and misstates the date of the original injury. The letter does little if anything to establish that the problem was not a recurrence rather than an aggravation of the original injury, or

even that that was the injury to which it was related. The letter was ambiguous at best.[3] Finally, the decision of the Arbitration Board is irrelevant. The Board never reached the merits; it based its decision on the town's procedural default.

At oral argument, appellants' counsel stressed that George's back injury had not been contested before. This provides little indication of whether the Selectmen contested it in good faith on this occasion. Counsel also contended that George would testify at trial that the new Chief had said that he was upset about the letters and had talked to the Selectmen about them. This offer of proof is not, however, in the record and is thus beyond the scope of this appeal. What *was* before the district court in this regard was the Chief's deposition, in which he states that he was aware of the letters but not bothered by them, and that he never discussed them with the Selectmen. In short, the plaintiffs offered little but their bare allegations of retaliatory motive.

In support for their motion for summary judgment, in contrast, defendants produced affidavits of the three Selectmen and a copy of their letter denying George's application. The affidavits state that the Selectmen denied the claim because they "felt that the back injury claim was questionable in their view and in the view of their legal advisors."[4] Their letter of denial stated that the Board had determined that indemnification was inappropriate under the circumstances because of the doubt as to whether the injury was work related and

2. The district court found that "[b]ecause plaintiff Janet has alleged no action on the part of the Board which affects her individually, she has failed to present a justiciable claim." Janet's allegations of retaliatory action against *her* via her husband may, however, satisfy standing requirements even though her legal theory seems dubious. *See United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). We need not decide that question because we find that she has failed to present sufficient facts indicating that the Selectmen did act in retaliation for her letter to withstand the motion for summary judgment.

3. The record also contains a letter from a Dr. Ciminello, dated March 6, 1979, which states

that George was at that time undergoing treatment for a ruptured disc that, in the doctor's opinion, was the result of the 1970 fall. A copy of this letter was apparently sent to the Selectmen. Appellants do not, however, mention this letter.

4. Also in the record is a letter to the Selectmen from the town counsel advising against payment of the claim. His concern—apart from a desire to save money—was that if the town paid when the insurer had already refused, the town might not be able to then recover from the insurer given its failure to cooperate. He considered the "liability question . . . a close one," but was willing to rely on the recurrence/aggravation distinction.

suggested that the claim be submitted to George's group health insurer. The Selectmen's denial came well over a year after publication of the letters against which it was allegedly in retaliation; George's claim had already been denied once, and it has never been found to be valid.

In determining whether summary judgment is appropriate the court must look at the record in the light most favorable to, and indulge all inferences in favor of, the party opposing the motion. *E.g., Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). The purpose of summary judgment is to go behind the pleadings and determine whether any further exploration of the facts is really necessary. *Briggs v. Kerrigan,* 431 F.2d 967, 968 (1st Cir.1970). We conclude that in this case none is. Appellants have offered nothing beyond the allegations of their complaint to suggest there is a factual dispute here. That is not enough. *See Beal v. Lindsay,* 468 F.2d 287, 291 (2d Cir.1972). Insofar as appears, the challenged action was entirely regular. We upheld a grant of summary judgment in similar circumstances in *Manego v. Cape Cod Five Cents Savings Bank,* 692 F.2d 174 (1st Cir.1982) (Selectmen's denial of entertainment license alleged to have been improperly motivated). There we found that the plaintiff had pointed to smoke but not fire, and "smoke alone is not enough to force the defendants to a trial to prove that their actions were not" improper. *Id.,* at 177. Here we do not even see any smoke.

This appeal is so lacking in legal substance that we order the appellants be taxed with double costs.

*Affirmed with double costs to be taxed against the appellants in favor of appellees.*