**John McELHINNEY, Plaintiff,**

v.

**INHABITANTS OF the TOWN OF TISBURY et al., Defendants.**

**Civ. A. No. 80–1503–G.**

United States District Court,
D. Massachusetts.

June 16, 1983.

Sanford A. Kowal, Kowal, Howard & White, Boston, Mass., for plaintiff.

Richard Neumeier, Parker, Coulter, Daley & White, Boston, Mass., for defendants.

**MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

GARRITY, District Judge.

This is an action under 42 U.S.C. § 1983 brought by a former member of the Tisbury police force against the inhabitants and various police commissioners and selectmen of the Town of Tisbury. In his complaint,

---

filed July 9, 1980, the plaintiff alleges that the defendant deprived him of property rights to which he was entitled under Mass. General Laws chapter 41, section 111F without due process of law. The defendants filed their first motion for summary judgment on April 29, 1981. After further proceedings, the defendants withdrew that motion and filed a supplemental motion for summary judgment in January, 1982. The motion was argued in February, 1982 and various legal memoranda were later submitted, the most recent in December, 1982.

The facts, taken in the light most favorable to and indulging all inferences in favor of the plaintiff, as the party opposing summary judgment, see *Hahn v. Sargent,* 1 Cir.1975, 523 F.2d 461, 464, *cert. denied,* 1976, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754, are as follows. Plaintiff was originally hired as a policeman by the Town of Tisbury on April 1, 1972. His employment was terminated on May 14, 1974, but he was rehired by the Town on March 15, 1975. Plaintiff claims that between April 1, 1972 and June 11, 1977 he experienced a series of stressful incidents connected with his employment as a police officer. These incidents had caused the plaintiff to be tense and to frequently become depressed. On June 11, 1977 he and his partner were called to a scene where an individual was contemplating committing suicide. The plaintiff was trying to calm the suicidal person when the plaintiff's gun inadvertently came out of its holster. The plaintiff's partner mistakenly believed the suicidal person had grabbed the plaintiff's gun. Fearing that the person might injure the plaintiff, the plaintiff's partner pointed his gun at the suicidal person, whereupon the plaintiff threw himself between his partner's gun and the person to prevent his partner from killing the person. No shots were fired, but the plaintiff felt responsible for endangering the life of the suicidal person. This incident seems to have been the "last straw," making the plaintiff even more de-

pressed and tense than he had been before the incident.[1]

On June 14, 1977 the plaintiff was examined by Dr. David E. Smith, a psychologist. At the conclusion of his examination of the plaintiff, Dr. Smith sent a letter to Raymond Maciel, the Tisbury police chief, reporting Dr. Smith's conclusions that: 1) plaintiff was "experiencing considerable stress" and 2) "should not at present be assuming the responsibilities of his duties as a police officer."

On the basis of Dr. Smith's report, Police Chief Maciel granted the plaintiff a sick leave. One month later, on July 12, 1977, Chief Maciel notified plaintiff that because plaintiff had exhausted his sick leave and all other benefits that would entitle him to leave of absence *with pay,* he was being placed on a thirty-day leave of absence *without pay.* When the thirty-day period expired, plaintiff did not return to work. On August 30, 1977 plaintiff filed an application for retirement with the Dukes County Retirement System under the provisions for retirement due to accidental disability, citing hypertension and heart disease as the causes of plaintiff's disability. That application was denied.

Plaintiff was notified September 21, 1977 that a hearing would be held September 27, 1977 "to hear from [plaintiff] regarding [his] position with the Police Department." The September 27th meeting was held and the minutes indicate that the selectmen opened the hearing by asking the plaintiff why he had failed to submit a letter from his physician concerning whether the plaintiff would be able to continue as a Tisbury policeman. The plaintiff gave no reason, so it was decided that plaintiff should be examined by the town physician, Dr. Feil. The officials present at the meeting informed the plaintiff that if Dr. Feil "stated that [plaintiff] could not return to work after the physical, then steps [would] be taken to fire [plaintiff] from the police force."

1. Defendants contest plaintiff's claim that his disability was job related. However, this is a disputed issue of fact; so for the purpose of defendants' motion for summary judgment we have assumed that the June 11, 1977 incident caused plaintiff's disability.

. On September 29, 1977, Dr. Feil examined plaintiff. Dr. Feil sent a letter to the Board of Selectmen, reporting his opinion that the plaintiff was anxious, hypertense, and depressed and that the plaintiff should not work as a policeman. The Board of Selectmen and police commissioners voted to terminate plaintiff. In a letter dated October 11, 1977 they informed him of their decision, stating that their decision was based on their discussion with the plaintiff at the September 27, 1977 meeting and Dr. Feil's report in which he stated his professional opinion that plaintiff should not be employed as a policeman.

On February 13, 1980 plaintiff's counsel wrote to the Tisbury Board of Selectmen on plaintiff's behalf, claiming that plaintiff was entitled to benefits under Massachusetts General Laws chapter 41, section 111F, which provides, in pertinent part:

> § 111F. Leave with pay for certain incapacitated police officers and fire fighters; employment; conditions; actions for intentional or negligent injuries inflicted upon same.
>
> Whenever a police officer or fire fighter of a city, town, or fire or water district is incapacitated for duty because of injury sustained in the performance of his duty without fault of his own, or a police officer or fire fighter assigned to special duty by the city or town, is so incapacitated because of injuries so sustained, he shall be granted leave without loss of pay for the period of such incapacity; provided, that no such leave shall be granted for any period after such police officer or fire fighter has been retired or pensioned in accordance with law or for any period after a physician designated by the board or officer authorized to appoint police officers or fire fighters in such city, town or district determines that such incapacity no longer exists. All amounts payable under this section shall be paid at the same times and in the same manner as, and for all purposes shall be deemed to be, the regular compensation of such police officer or fire fighter.

Plaintiff's counsel contended that plaintiff was entitled to benefits under Section 111F from July 12, 1977, the day when the Town stopped granting plaintiff leave *with pay,* until he was retired or pensioned or determined to be no longer disabled. Plaintiff's counsel demanded that the Town of Tisbury pay plaintiff the 2½ years of back wages and that the Town put plaintiff back on the salary roles. The Town refused.

Plaintiff then filed two actions. One, in the Superior Court of Dukes County, asserted plaintiff's right to benefits under the applicable state laws. That case was eventually settled and the plaintiff received $37,000 and medical insurance coverage afforded by the Town's retirement plan.

The other action brought by plaintiff is this case, in which the plaintiff alleges that the Town and the individual defendants deprived the plaintiff of his property rights under M.G.L. c. 41, § 111F without due process of law, in violation of the fourteenth amendment. Plaintiff's basic claim is that he was involved in a stressful incident "in the performance of his duty without fault of his own," so under the statute the Town of Tisbury was required to grant him leave without loss of pay until they retired him or granted him a pension or held a hearing for the specific purpose of determining whether plaintiff was eligible for benefits under the statute.

No hearing was ever held by the Town for the specific purpose of determining whether the plaintiff was eligible for disability leave without pay under § 111F. However, the reason was not, as plaintiff's counsel asserts, that the plaintiff asserted a claim under the statute and the defendants unlawfully ignored that claim and refused to grant him a hearing. Plaintiff never requested such a hearing because plaintiff did not believe he qualified under § 111F. The Town officers did not believe he qualified. Under § 111F, a claimant is only entitled to benefits if he is disabled during employment as a police officer. At the time of plaintiff's termination there was doubt that any "psychological injury" suffered by an employee was compensable un-

der either the Massachusetts Workmen's Compensation Act or the statute here at issue. In *Begin's Case,* 1968, 354 Mass. 594, 238 N.E.2d 864, the Supreme Judicial Court had ruled that Begin's "acute anxiety state" did not constitute a compensable injury under the Workmen's Compensation Act, even "assuming the existence of a causal relationship between [Begin's] employment [as a correction officer guarding criminally insane individuals and those who had committed sex violations] and the illness." 354 Mass. at 596, 238 N.E.2d 864.

It was not until *Fitzgibbons's Case,* 1978, 374 Mass. 633, 373 N.E.2d 1174, and *Albanese's Case,* 1979, 378 Mass. 14, 14–15, 389 N.E.2d 83, that the Supreme Judicial Court made it clear that "if an employee is incapacitated by a mental or emotional disorder causally related to a series of specific stressful work-related incidents, the employee is entitled to compensation" under the Massachusetts Workmen's Compensation Act. There still have not been any reported decisions of which this court is aware that have applied the same analysis to cases under § 111F, the statute here at issue. That explains why plaintiff did not believe he qualified for benefits under § 111F and why he did not request a hearing.

Plaintiff's counsel contends that Police Chief Raymond Maciel's letter to the Tisbury Board of Selectmen which informed the selectmen that "Officer John McElhinney has been out on sick leave for the following days: June 10, 11, 12 & 16th" constituted an assertion by the plaintiff to sick leave with pay pursuant to § 111F. Similarly, plaintiff's counsel argues that plaintiff's application for retirement due to accidental disability was a claim under § 111F. In our view, however, Chief Maciel's letter to the selectmen and the plaintiff's retirement application cannot be considered assertion of a claim under § 111F. In Chief Maciel's letter he stated, "I am further investigating this officer's illness and will inform you of the outcome." He attached Dr. Smith's report which stated that plaintiff was "experiencing considerable stress" and "should not at present be assuming the responsibilities of a police officer." In plaintiff's insurance claim he stated his sick leave was due to hypertension and nerves, and in his retirement application he said hypertension and heart disease had caused his disability. Drawing all reasonable inferences in favor of the plaintiff, we cannot say that plaintiff asserted a right to benefits under Mass.G.L. c. 41, § 111F before plaintiff's counsel's February 13, 1980 letter to the Tisbury Board of Selectmen, two years and seven months after the Town stopped paying plaintiff's salary.

Therefore, the issue which remains is whether the defendants deprived the plaintiff of due process of law. The due process analysis required by decisions of the Supreme Court directs that the first question is whether the right asserted by the plaintiff is a property interest. *See, e.g., Board of Regents v. Roth,* 1972, 408 U.S. 564, 567, 92 S.Ct. 2701, 2704, 33 L.Ed.2d 548. The question is whether the defendants deprived the plaintiff of a property interest when they stopped paying his salary without having a hearing to determine whether plaintiff was "incapacitated for duty because of injury sustained in the performance of his duty without fault of his own." Mass.G.L. c. 41, § 111F. Plaintiff's claim must fall because the requirements of due process apply only to interests which qualify as protected interests. *Board of Regents v. Roth, supra* at 577, 92 S.Ct. at 2709. Plaintiff's claim of entitlement must be decided by reference to state law. *Bishop v. Wood,* 1976, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684. In *Packish v. McMurtrie,* D.Mass. 1982, 539 F.Supp. 548, 550, *aff'd per curiam,* 1 Cir.1983, 697 F.2d 23, Judge Zobel held that Mass.G.L. c. 41, § 111F, rather than creating an absolute entitlement to leave without loss of pay, only gives the plaintiff a property right after he has been found to have a work-related injury. Plaintiff disagrees with Judge Zobel's analysis, arguing that the state law is a "wage and benefit continuation act" which gave plaintiff a property right and an entitlement to have his wages continued until the Town held a hearing and determined him to be ineligible. Judge

Zobel reached her conclusion because of her view that § 111F must be analyzed consistently with Mass.G.L. c. 41, § 100, which provides, in relevant part:

*Upon application* by a fire fighter or police officer of a city [or] town ... *the board* or officer of such city [or] town ... *shall determine whether it is appropriate under all the circumstances* for such city [or] town ... to indemnify such fire fighter or police officer for his reasonable hospital, medical, ... expenses ... incurred as the natural and proximate result of an accident occurring or of undergoing a hazard peculiar to his employment, while acting in the performance and within the scope of his duty without fault of his own. (emphasis added).

Judge Zobel reasoned that both §§ 100 and 111F did not give disabled officers an entitlement to receive disability benefits until they submitted applications for those benefits and were initially determined to be eligible under the statutory provisions. That conclusion has also been reached by the Massachusetts Supreme Judicial Court:

[A]ll that *must be established* in this case *to create an entitlement* under G.L. c. 41, § 111F, the disability being conceded, is the sustaining of an injury in the performance of duty ....

*Wormstead v. Town Manager of Saugus,* 1975, 366 Mass. 659, 662, 322 N.E.2d 171 (emphasis added). Therefore, § 111F does not give a disabled police officer or fire fighter a right to leave with pay until he asserts a right to payments under § 111F and it is determined that the disability or injury was sustained in the performance of duty.

Plaintiff's contention, if accepted, would require us to hold that whenever a police officer or fire fighter informs a town that he no longer wishes to serve in that capacity for medical reasons, the town cannot stop paying his benefits until they initiate a hearing specifically for the purpose of determining if the officer is eligible for benefits under Mass.Gen.Laws c. 41, § 111F, even if the officer or fire fighter does not claim any entitlement under § 111F. In our opinion, this would be to go too far. At a very minimum, the plaintiff was required to inform the Town of Tisbury that he was asserting a claim under Mass.Gen.Laws c. 41, § 111F and that he wanted the town to give him an opportunity to be heard. On September 21, 1977 the Town hand-delivered to the plaintiff a letter stating that a hearing had been scheduled at Town Hall "to hear from [the plaintiff] regarding [his] position with the Police Department." Plaintiff was given an opportunity at that time to assert whatever claims he might have had. He did not claim any entitlement to workmen's compensation or any other disability benefits.

The plaintiff's first claim to entitlement under § 111F was sent by plaintiff's counsel to the Town on February 13, 1980 and plaintiff's counsel did not assert that plaintiff had a right to a hearing. He merely informed the Board of Selectmen that he believed their termination of plaintiff's employment was unlawful and that if the Town did not respond by March 1, 1980 plaintiff's counsel would "proceed with legal action." Plaintiff's counsel was true to his word and he eventually filed the state court action, which was settled. However, the plaintiff has made no showing that he was deprived of due process. Accordingly, defendants' motion for summary judgment is allowed.