Paul L. LAMOUREUX, Plaintiff,

v.

Doris HAIGHT, Michael Manugian & Charles Johnson as they constitute the Board of Selectmen of the Town of West Bridgewater, Ervin G. Lothrop, Chief of Police, Charles Pickering, Eldon F. Moreira, and J. Joseph Lydon, Defendants.

Civ. A. No. 84–3051–W.

United States District Court, D. Massachusetts.

Oct. 28, 1986.

Stephen M.A. Woodworth, Francis J. Lynch, J.D., Brockton, Mass., for plaintiff.

John P. Lee, Attleboro, Mass., for defendants.

## MEMORANDUM AND ORDER

WOLF, District Judge.

Plaintiff Paul Lamoureux, a former police officer in the Town of West Bridgewater, Massachusetts has brought this action under 42 U.S.C. § 1983 against the Town of West Bridgewater (the "Town"), several Town Selectmen, and the Chief of Police. Lamoureux alleges that defendants violated plaintiff's federally protected rights by engaging in a course of conduct that denied him certain benefits under Mass. Gen. Laws c. 41, § 111F, related to a back injury suffered in the line of duty.

Defendants have moved to dismiss on the ground that plaintiff fails to state a claim for which relief can be granted under § 1983 because, defendants argue, Lamoureux has failed to allege adequately that he was deprived of any right under the Constitution or laws of the United States. In addition, the individual defendants who have been sued in their personal as well as in their official capacities have moved for dismissal based on the defense of qualified immunity.

For the reasons stated below, the motion to dismiss for failure to state a claim is granted. It is, therefore, not necessary to decide the issue of qualified immunity.

## I. FACTS

The facts alleged in the complaint are as follows.

On August 23, 1979, Lamoureux, in performance of his duties as a police officer, was injured through no fault of his own. Plaintiff injured his back while assisting an accident victim into an ambulance and while attempting to identify a car involved in the accident.

Lamoureux gave "good and sufficient" notice of his injury to his superiors. He received medical treatment, where it was determined that he could not perform all of the duties of a police officer.

On October 2, 1979, Lamoureux informed defendant Chief of Police that his physician stated that he could return to "light duty."

Plaintiff stated to the Chief that he desired to perform such duties.

On December 6, 1979, Lamoureux was advised by the Chief that the Selectmen had determined that plaintiff's injury was not work related and that days of work missed would be charged to sick leave. As of that date, after deducting the work days missed, plaintiff had seven sick days remaining. The Selectmen's decision was made despite the Chief's knowledge that Lamoureux's injury was the result of plaintiff's assisting an accident victim while on duty. The Chief signed an October 5, 1979 Claim Report to this effect. Plaintiff protested the Selectmen's determination.

On December 11, 1979, Lamoureux was informed by the Police Chief that the Town, by vote of the Selectmen, refused to allow him to return to "light duty."

On February 9, 1980, the defendants paid plaintiff the balance of his sick leave and vacation benefits and indicated that there would be no further payments. In March, 1980, Lamoureux brought suit in state court to enforce his right to disability benefits under Mass. Gen. Laws c. 41, § 111F.

In March, 1980, the Chief filed an action with the Plymouth County Retirement Board seeking to impose an involuntary retirement on Lamoureux.

On March 14, 1980, the Plymouth Superior Court granted a preliminary injunction enjoining the defendants from withholding from Lamoureux disability benefits under Mass. Gen. Laws c. 41, § 111F. Such benefits were equal to his regular weekly pay. Subsequent to this state court order, defendants, in an effort to circumvent the court order, reduced Lamoureux's weekly payments by claiming that he had been reassigned to the day shift, for which the pay was less than the night shift duty to which he had previously been assigned. Plaintiff does *not* allege that he returned to Superior Court to contest the purported circumvention of that court's order.

On November 3, 1980, defendants, by Town counsel, initiated a groundless and specious suit against the Plymouth County

Retirement Board, seeking to set aside the Board's denial of the defendants' application for involuntary retirement of Lamoureux and the Board's allowance of Lamoureux's application for retirement for accidental disability. This action was filed solely to harass the plaintiff. On November 19, 1980, defendants' action was dismissed with costs. In November, 1980, defendants filed a groundless and specious appeal. In February, 1981, defendants voluntarily dismissed this appeal.

In March, 1981, the Chairman of the Selectmen advised the Town's insurer that the Town was accepting the premise that Lamoureux was injured in the line of duty.

In March, 1981, Lamoureux attempted to place his name on the Town's ballot as a candidate for Selectman. At open and public Selectmen's meetings on March 31, 1981 and April 6, 1981, several defendant Selectmen objected to his nomination, questioning Lamoureux's qualifications for office and focusing on the potential conflict of interest in light of the claims and lawsuits he was maintaining against the Town. These remarks were reported in the media. In addition, defendant Selectman Haight, expressly representing that she was writing "as a registered voter of the Town of West Bridgewater" (See Exhibit F to the First Amended Complaint), filed an objection to plaintiff's nomination with the Town Clerk. Lamoureux claims these actions were taken to embarass him and to influence voters unfavorably.

On September 22, 1982, the Superior Court granted summary judgment on Lamoureux's claim for disability benefits under Mass. Gen. Laws c. 41, § 111F. Despite knowledge of the groundless and specious nature of their claim, defendants appealed the ruling in October, 1982. During the course of the appeal, Town Counsel filed dilatory pleadings containing misrepresentations and outright fabrications, including a motion to remand. On May 24, 1983, defendants voluntarily dismissed the appeal.

As of the date of the complaint in this action, defendants had refused to indemnify plaintiff for medical bills as required by the state court order. Plaintiff does *not* allege that he sought redress in the state court for this purported violation of its order. At oral argument, plaintiff acknowledged that since the inception of this suit he has received all the benefits and payments to which he was entitled.

## II. DISCUSSION

When deciding a motion to dismiss, the court must accept the allegations of the complaint as true. *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam). The court must also view those alleged facts in the light most favorable to the plaintiff, and the complaint may only be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle [him] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir.1976).

Defendants have moved to dismiss this action on the ground, among others, that plaintiff has failed adequately to allege that he was deprived of any rights under the Constitution or laws of the United States.

Lamoureux contends that the facts alleged in the complaint involve violations of his constitutional rights in several ways. First, he asserts that defendants violated his right to procedural due process under the Fourteenth Amendment of the Constitution by terminating payments to him without notice or a hearing. Second, Lamoureux contends that defendants' conduct relating to the state court litigation violated constitutional rights recognized by the Court of Appeals for the First Circuit in *Roy v. City of Augusta, Maine*, 712 F.2d 1517 (1st Cir.1983). Finally, Lamoureux suggests that defendants' statements concerning his possible candidacy for Selectman violated his federal statutory and constitutional rights. For the reasons explained below, with regard to each of his theories, Lamoureux has failed to state a claim for which relief under § 1983 may be granted.

### A. *The Claim Relating to Notice and a Hearing*

42 U.S.C. § 1983 provides a remedy for "deprivation of any rights, privileges, or immunities secured by the constitution and laws ..." of the United States by a public official. It does not provide a federal remedy for every violation of state law committed by a public official. *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). More specifically, the Fourteenth Amendment's Due Process Clause does not create a cause of action for which § 1983 provides a remedy whenever a public official may be characterized as the wrongdoer. *Paul v. Davis*, 424 U.S. 693, 699–701, 96 S.Ct. 1155, 1159–1161, 47 L.Ed.2d 405 (1976). Rather, to state a due process claim on which relief can be granted under § 1983 in a case such as this case, a plaintiff must allege deprivation of a protected property interest, because there can be no due process violation without such an interest. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). In this case, plaintiff has not alleged facts which, if proven, would establish either a protected property interest or a deprivation of any such interest without due process.

In two recent decisions in this district, courts have found that Mass. Gen. Laws c. 41, § 111F does not create an absolute entitlement to benefits. *McElhinney v. Town of Tisbury*, 565 F.Supp. 959 (D.Mass. 1983); *Packish v. McMurtrie*, 539 F.Supp. 548 (D.Mass.1982), *aff'd*, 697 F.2d 23 (1st Cir.1983). Both of these cases held that § 111F creates a property right only after a finding that an injury was work-related. In *Packish*, Judge Zobel stated:

> [T]he right to be granted leave without loss of pay is clearly conditioned on the Town's determination that the injury was work-related. Until plaintiff is found to have a work-related injury, he does not have a property right.

539 F.Supp. at 550.

In *Packish*, Judge Zobel in effect found that until it is determined that an injury is work-related—and a property right is thus created—there is no constitutional right to due process which may be violated. In affirming *Packish*, the First Circuit stated that it was "essentially in agreement with the district court's disposition ..." of the claim of an alleged deprivation of property without due process. 697 F.2d at 25.

This court, therefore, finds that until Lamoureux's injury was determined to be work-related—in this instance by the state court—he did not have a property right on which a claim of an alleged deprivation of due process could be predicated.

Moreover, in *Packish*, the First Circuit concurred with the district court holding that even assuming that a protected property interest in disability payments existed from the time of plaintiff's injury, there was not a deprivation of property without due process because the plaintiff ultimately received a hearing and payment. 697 F.2d at 25. As the First Circuit said in language equally applicable here:

> [Plaintiff's] claim, at best, can only be that the Selectmen's *initial* procedures were inadequate and resulted in unconstitutional delay. But any such claim is clearly without merit. If a prior hearing is not necessary when disability benefits are terminated, *Mathews v. Eldridge*, 424 U.S. 319 [96 S.Ct. 893, 47 L.Ed.2d 18] (1976), certainly an immediate hearing is not required for the denial of an initial application.

*Id.*

Therefore, the court finds that prior to the state court decision that Lamoureux was entitled to receive disability benefits, he did not have a protected property interest and, in any event, the available post-deprivation procedure satisfied any right to due process Lamoureux may arguably have had immediately following his injury.

### B. *The Claims Relating to Roy v. City of Augusta, Maine*

After the state court decided that Lamoureux was entitled to disability payments

under Mass. Gen. Laws. c. 41, § 111F, and ordered that they be paid, plaintiff had a property right of which he could not be deprived without due process of law. Plaintiff contends that this case is analogous to *Roy v. City of Augusta, Maine,* in which the First Circuit found a deprivation of property without due process. The alleged facts of this case, however, are different in material respects from those involved in *Roy.* In addition, some of the reasoning of *Roy* has been eroded by the evolution of the law relating to post-deprivation remedies for intentional takings of property. Thus, as explained below, plaintiff also fails to state a claim for deprivation of property without due process on which relief could be granted under *Roy.*

*Roy* involved allegations that defendants' grant of an expired, invalid license in response to a court order, following their initial refusal to renew the license, deprived plaintiff of a property right. *Roy,* 712 F.2d at 1522. In *Roy,* plaintiff obtained a judgment from the state's highest court directing city officials to issue him a pool hall license. *Id.* In response, defendants issued Roy an expired license. *Id.* Although Roy returned to state court and secured an order to issue a current license, the remedy came too late, as he had by then lost ownership of the pool hall due to his economic distress resulting from the shutdown of his business. *Id.*

In finding that Roy had stated a claim for which relief could be granted, the First Circuit said:

[Roy] was ... denied the fruits of his victory by what Roy alleges were the entirely arbitrary actions of the defendants, who took it on themselves to disregard and subvert the Maine court's mandate. Ordered to give Roy a license, defendants gave him instead a useless, expired license. Arguably, this amounted to the taking of his property (the license) without due process, since—on the theory Roy presents—the defendants simply flouted the mandate of the state court, *rendering the court's ruling in Roy's favor and the state's process a*

*nullity.* Roy's subsequent efforts to secure state court redress were technically successful—the state court agreed that he should be granted a current license— but by then Roy had lost the premises, having run out of funds, *and the state court could afford no practical redress.*

*Id.* at 1523 (emphasis added).

In a footnote to the foregoing statement, the First Circuit explained that:

In dismissing this case, the district court relied upon *Parratt v. Taylor,* 451 U.S. 527 [101 S.Ct. 1908, 68 L.Ed.2d 420] (1981). We do not think that *Parratt* is directly controlling here. In *Parratt* the Supreme Court held that the negligent deprivation of property does not violate due process where the state provides an adequate post-deprivation remedy for the loss. In the instant case, Roy alleges that he was deprived of his property because the defendants intentionally disobeyed the state court's order. Moreover, because of the state's grant of absolute immunity to the defendants, 14 Me. Rev.Stat.Ann. § 8111; *McNally v. Mokarzel,* 386 A.2d 744 (Me.1978), Roy appears unable to receive a damage remedy under state law.

*Id.* at 1523–24 n. 6.

In the present case, Lamoureux attempts to state a claim under *Roy* for an alleged intentional effort by defendants to circumvent or disobey state court orders by reassigning him to the day shift to reduce his benefits, by failing to pay him promptly his medical benefits, and by filing spurious suits and appeals, thus allegedly rendering the state court's orders a nullity. These claims in effect allege a loss of property occasioned by random, unauthorized acts of public officials, rather than by an established state procedure. Since the First Circuit decided *Roy,* the Supreme Court has held that:

[A]n unauthorized intentional deprivation of property by a [public official] does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment *if a*

*meaningful post deprivation remedy for the loss is available.*

*Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984) (emphasis added).

█ In order to prevail on a claim of a deprivation of procedural due process, "the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate." *Id.* at 539, 104 S.Ct. at 539 (O'Connor, J., concurring). Lamoureux has done neither.

█ In contrast to Roy, who returned to state court when he was issued an expired license, Lamoureux does not claim that he asked the state court to enforce its order when his disability benefits were reduced and his medical bills were not paid promptly. He did not, therefore, avail himself of an obvious and accessible remedy provided by state law.

Similarly, also in contrast to Roy, Lamoureux has not alleged—and the court has no reason to infer—that a motion by him in the state court would not have resulted in the monetary relief he would have been seeking, if his claims that the defendants were circumventing or disobeying that court's orders were meritorious.

Moreover, once again in contrast to Roy, Lamoureux has not shown that defendants were absolutely immune to suit, officially or individually. To the contrary, Massachusetts law expressly authorizes claims against public officials individually for alleged intentional torts, including malicious abuse of process. Mass. Gen. Laws c. 258, § 10(c). Massachusetts law also permits municipalities to indemnify their officials in such cases. Mass. Gen. Laws. c. 258, § 9. Thus, unlike in *Roy,* there was an adequate state tort remedy available to Lamoureux.

As plaintiff has failed to allege that he availed himself of the remedies afforded by state law and has failed to show that the available remedies were inadequate, he has failed to state a claim for a deprivation of procedural due process on which relief can be granted.

Lamoureux also alleges, however, that defendants' conduct in connection with state court litigation "so shocks the conscience as to constitute a deprivation of the plaintiff's federally protected rights." (First Amended Complaint, ¶ 38). This is an effort by plaintiff to state a claim for a violation of a constitutional right to substantive due process. It, too, however is not a claim on which plaintiff can prevail on the alleged facts of this case.

█ "A 'substantive due process' claim is, fundamentally, not a claim of procedural deficiency, but, rather, a claim that the state's conduct is inherently impermissible." *Schiller v. Strangis,* 540 F.Supp. 605, 614 (D.Mass.1982). It has been held that *"Parratt* is ... not applicable to instances where the substantive guarantees of the Constitution are alleged to be violated, as opposed to alleged violations of procedural due process." *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 872 (7th Cir.1983). Thus, federal court subject matter jurisdiction in cases adequately alleging violations of substantive due process is not affected by the adequacy of state remedies. *Id.; O'Quinn v. Manuel,* 767 F.2d 174, 177, *modified,* 773 F.2d 605, (5th Cir.1985).

█ A substantive due process claim, however, must be based upon an explicit or judicially recognized implicit substantive constitutional right. Such rights include, for example, the Fourth Amendment right to be free from excessive force, *Schiller;* the Fourth Amendment right to be free from unreasonable seizures of personal property, *Wolf-Lillie;* the Eighth Amendment right to be free from cruel and unusual punishment, *O'Quinn;* and the judicially recognized substantive constitutional right "to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience of a court." *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980), (citing *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (forcible use of stomach pump by police); *Jenkins v. Averett,* 424 F.2d 1228 (4th Cir.1970)

("reckless" pistol shooting of suspect by police); *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied, Employee-Officer John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973) (unprovoked beating of pre-trial detainee by guard)). Lamoureux, however, does not base his substantive due process claim on any explicit or judicially recognized implicit substantive constitutional right.

To the extent that Lamoureux seeks to analogize his case to *Roy*, he states only a procedural due process claim. In *Roy*, the First Circuit did not state that it was finding a substantive due process violation. Nor did the First Circuit in *Roy* cite or discuss any cases involving violations of substantive due process. Rather, the decision in *Roy* addressed only the adequacy of state remedies in the context of the facts of that case. In finding in *Roy* that the "state court could afford no practical redress," the First Circuit found a deprivation of procedural due process. 712 F.2d at 1523. The First Circuit did not indicate in *Roy* that the Due Process Clause itself could be the sole basis for a substantive due process claim.

■■■ In any event, plaintiff's allegations in this case do not adequately allege a substantive due process violation. Plaintiff's contentions concerning defendants' conduct relating to the state court litigation may state a claim under Massachusetts law for contempt or abuse of process. However, as indicated earlier, not every state law tort becomes a federally cognizable "constitutional tort" under § 1983 simply because it is committed by a public official. *Baker*, 443 U.S. at 146, 99 S.Ct. at 2695. For the reasons stated previously, plaintiff has not alleged facts which, if proven, would establish that he was de-

prived of his right to *procedural* due process by defendants. It necessarily follows, therefore, that he has not alleged facts sufficient to prove that he was denied procedural due process in so egregious a manner so as to "shock the conscience" of the court or community and thus to establish that he was deprived of his right to *substantive* due process.[1] *Schiller*, 540 F.Supp. at 614.

## C. The Claims Relating to Lamoureux's Candidacy

Lamoureux's remaining claims relate to defendants' alleged actions in response to his effort to become a candidate for Selectman. Plaintiff contends that certain of the defendant Selectmen made statements at a public Selectmen's meeting concerning his qualifications for office generally and his possible conflict of interest if he were to become an official of the Town while maintaining claims against it. Lamoureux alleges that defendants knew that their statements would be published and intended to embarrass him and unfavorably influence voters who might have supported his candidacy. He claims that defendants' statements were part of an effort to deprive him of his right to run for local office. He also claims that a letter by Selectman Haight, expressly written in her individual capacity, was similarly motivated. The court finds, however, that these allegations do not state a claim for which relief may be granted under § 1983.

■■■ Once again, only violations of constitutional rights give rise to a § 1983 action, and not every state tort is also a constitutional violation. *Baker*, 443 U.S. at 146, 99 S.Ct. at 2695. With regard to the statements allegedly made at the Select-

---

**1.** This court believes that a substantive due process claim may not rest solely on an alleged egregious deprivation of procedural due process. As a practical matter, however, it appears that this issue is at most an academic question. If a procedural due process violation were adequately alleged, a § 1983 action could be maintained and it would be unnecessary to implicate the concept of substantive due process in connection with a motion to dismiss. If a proce-

dural due process claim were proven, it would be unnecessary to consider whether the procedural due process violation was so egregious as to "shock the conscience" and thus also constitute a deprivation of substantive due process. If a procedural due process claim is not adequately alleged or proven, then, *a fortiori*, a substantive due process claim based on an aggravated deprivation of procedural due process will not have been adequately plead or proven.

men's meeting concerning Lamoureux's candidacy, it is doubtful that they adequately allege the state law tort of defamation, for plaintiff does not allege that the statements were untrue. In any event, the alleged remarks, however motivated, would not violate Lamoureux's constitutional rights.

In *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405, the Supreme Court established that:

> The words "liberty" and "property" as used in the Fourteenth Amendment do not in terms single out reputation as a candidate for special protection over and above other interests that may be protected by state law. While we have in a number of our prior cases pointed out the frequently drastic effect of the "stigma" which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either "liberty" or "property" by itself sufficient to invoke the procedural protection of the Due Process Clause.... [T]he weight of our decisions establishes no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.

Because injury to reputation is not sufficiently tangible, the Court in *Paul* ruled that the alleged defamation must result in loss of a protected right, such as government employment, to state a federal cause of action. *Id.* at 706, 96 S.Ct. at 1163. Allegations that the defendant state official had deprived plaintiff of future employment opportunities without due process were insufficient to meet this standard.

Lamoureux contends that defendants' alleged statements at the Selectmen's meetings were intended to injure his right to be on the ballot and to be elected to local office. He has not identified any authority for the proposition that this right is a *federal* right. Lamoureux also fails to allege

that defendants' efforts were successful and thus that he was, by their actions, deprived of any possible federal right to run for local office.

In addition, although the First Circuit has not decided this issue, the defendant Selectmen may have absolute immunity for their statements at Selectmen's meetings. See *Aitchison v. Raffiani,* 708 F.2d 96 (3d Cir.1983); *Bruce v. Riddle,* 631 F.2d 272 (4th Cir.1980); *Hernandez v. City of Lafayette,* 643 F.2d 1188 (5th Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); *Reed v. Village of Shorewood,* 704 F.2d 943 (7th Cir.1983); *Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607 (8th Cir.1980); *Kuzinich v. County of Santa Clara,* 689 F.2d 1345 (9th Cir.1982).

■ Finally, and perhaps most importantly, Lamoureux did have claims against the Town while he was seeking to run for Town office. Public discussion of this fact by his opponents, however motivated, would not be constitutionally impermissible. Rather, such comments would be entirely consistent with the important right of voters to know relevant facts as they consider how to cast their votes. *Jones v. Palmer Media, Inc.,* 478 F.Supp. 1124, 1129 (E.D. Texas 1979).

A federal court is not an appropriate forum for ascertaining the accuracy or animus for statements by political adversaries. The Supreme Court has recognized in considering the question of legislative immunity that:

> In times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such controversies. Self-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses.

*Tenney v. Brandhove,* 341 U.S. 367, 378, 71 S.Ct. 783, 789, 95 L.Ed. 1019 (1951). This conclusion is equally applicable in this case.

In view of the foregoing, Lamoureux's claims concerning alleged comments at the Selectmen's meetings do not state a claim

for which relief under § 1983 may be granted.

■ In addition, plaintiff's claim that defendant Haight's letter to the Town Clerk objecting to Lamoureux's nomination to run for Selectman fails to state a claim which may be maintained pursuant to § 1983. An individual must be acting under color of law in depriving a plaintiff of a constitutional right for § 1983 to be implicated. *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). As indicated earlier, it is doubtful that Lamoureux's allegations regarding the efforts to prevent his nomination would, if proven, constitute deprivation of a federal right. It is uncontroverted, however, that in the letter in question defendant Haight expressly stated that she was "filing this objection [to Lamoureux's nomination] as a registered voter of the Town of West Bridgewater." Exhibit F to the First Amended Complaint. Plainly, she was not acting under color of law. Thus, plaintiff's contentions concerning the letter do not state a claim for which § 1983 provides a remedy.

## CONCLUSION

For the reasons previously stated, defendants' motion to dismiss is hereby ALLOWED.