ANSELMA STATION, LTD. and
Barry N. Snader, Appellants,

v.

PENNONI ASSOCIATES, INC.,
John J. Gillespie, P.E. and
Kenneth G. D'Aurizio.

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1994.
Decided Feb. 3, 1995.

Alan K. Cotler, for appellants.

Cathy A. Wilson, for appellees.

Before PELLEGRINI and KELLEY, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

This is an action against the township engineers of West Pikeland Township, Chester County. An appeal has been filed by a property owner, Anselma Station, Ltd. and its President, Barry N. Snader (Anselma) from the March 16, 1993 order of the Court of Common Pleas of Chester County (trial court) sustaining the preliminary objections to Count VIII of Anselma's Amended Complaint against the engineer, Pennoni Associates, Inc. and two of its employees, John J. Gillespie and Kenneth G. D'Aurizio.

In that Count, Anselma alleged that before and during the processing of Anselma's application to the Township for approval of a site development, Pennoni, while acting under the color of state law, denied Anselma its rights to procedural due process, to substantive due process and to equal protection of the law in violation of 42 U.S.C. § 1983 (Section 1983).

The entire Amended Complaint contained 42 pages with eleven separate counts, with about 75 pages of exhibits attached thereto. We will not attempt to summarize these documents in their entirety. In brief summary, in ten of the eleven counts, Anselma sought relief under state tort law and in Count VIII sought relief under Section 1983 of the federal Civil Rights Act. Anselma in the state tort claims sought damages on behalf of ei-

ther Anselma or its president as follows: I) Commercial Defamation–Libel; II) Commercial Defamation–Slander; III) Conspiracy to Injure Reputation; IV) Slander of Property; V) Trespass of Land; VI) Intentional Interference with Prospective Contractual Relations; VII) Tortious Conversion; VIII) Civil Rights Violation under 42 U.S.C. § 1983; IX) Commercial Defamation–Libel; X) Commercial Defamation–Slander; and XI) Conspiracy to defame. The trial court judge, the Honorable Thomas G. Gavin, overruled all preliminary objections to counts I–IV and IX–XI but sustained Pennoni's preliminary objections to Counts VI and VII relating to alleged interference with contract and Tortious Conversion of personal property and dismissed those counts. He also sustained preliminary objections to the civil rights Count VIII.

In dismissing Count VIII, the trial court concluded that the conduct alleged in the complaint did not rise to the level of a constitutional tort and that the complaint did not state a cause of action under Section 1983. The only issue raised on appeal is whether the allegations contained in Anselma's amended complaint adequately state a cause of action under Section 1983, i.e. that Pennoni and its two employees, while acting under color of state law, deprived Anselma of property by violation of its procedural or substantive due process rights or its right to equal protection. We affirm.

Count VIII of the Complaint is stated at paragraphs 141 through 150, but because those paragraphs incorporate all of the preceding paragraphs by reference, it is necessary to review paragraphs 1 through 140 as well.

## I. FACTS

Judge Gavin aptly summarized the relevant facts pleaded in the amended complaint and we adopt that summary here:

On or about December 15, 1986 Anselma acquired a parcel of land consisting of approximately six (6) acres located in the township near Pickering Creek (hereinafter "the site"). At the time of the purchase, the site contained six (6) buildings, two (2) sewer systems and two (2) water wells. [Anselma] allege[s] that at the time of the purchase, the site was a squalid eyesore and in disrepair, but was zoned and was being used for commercial purposes pursuant to the township ordinance that was in effect at the time. Anselma acquired the site with the intention of substantially rehabilitating it and further developing it for commercial purposes, including the leasing of space for offices and retail stores.

The amended complaint further alleges that on or about July 29, 1986, prior to Anselma's acquisition of the site, [Pennoni] had inspected the site at the request of the Township's Board of Supervisors (hereinafter "the Board") because the Board was considering purchasing the property for the township's own use. As alleged in the amended complaint, the inspection reportedly confirmed the longstanding suspicion that possible soil contamination and possible raw sewerage discharge into Pickering Creek existed at the site. The Board unsuccessfully negotiated with the seller of the site, Nevin N. Myer and related interests. [Anselma] further aver[s] that subsequent to the unsuccessful township negotiations, Anselma purchased the site without knowledge of the July 1986 inspection or any of the township's concerns about the condition of the site. In June of 1987 Anselma submitted preliminary plans to the township proposing to improve the site for commercial uses including the leasing of the developed space. In paragraph 18 of the amended complaint, [Anselma] allege[s] that from that date forward the township and the Board aided, abetted, advised and mounted an unwarranted effort to block the development of the site without a rational basis and in reckless disregard of Anselma's rights[,] to defame Anselma and Mr. Snader and deny them equal protection of the laws and to slander the subject real estate and depress its value. [Anselma] refer[s] to four documents in support of [its] contentions: 1) the Pennoni letter dated April 16, 1990 (See Exhibit A of [Anselma's] Complaint); 2) the Pennoni report dated May 23, 1990 (See Exhibit B of [Anselma's] Complaint);

3) the Pennoni Memorandum dated July 9, 1990 (See Exhibit C of [Anselma's] Complaint); and the Pennoni Memorandum dated December 10, 1990 (See Exhibit D of [Anselma's] Complaint). They also allege that [Pennoni's] activities include, but are not limited to, trespassing onto the site during which clandestine testing was performed and samples of stream water and soils were removed, orally presenting false and malicious statements to the township, intervening with Anselma's application for a permit to allow the removal of any allegedly contaminated soil and the installation of a monitoring well as requested by DER [Department of Environmental Resources], interfering with the correction of the township's misdesignation of a portion of Anselma's property as a floodplain, participation in discriminatory enforcement of local, state and federal land use regulations against Anselma but not against others similarly situated and engaging in various conversations and meetings that resulted in depressing the value of the site and damaging the good names and reputations of Anselma and Mr. Snader. [Anselma] believe[s] that such activities caused (1) the Board and CCHD [the Chester County Health Department] to force Anselma to discontinue the existing sewer system and create a holding tank system imposing unnecessary and onerous expenses to Anselma and a loss of income from the rental of apartments because the holding tanks could not provide adequate reserve for sewer containment; (2) the Board and DER to force Anselma to undertake unwarranted engineering, legal and other expenses, (3) unfounded, defamatory allegations and accusations to be levelled at Anselma and Mr. Snader, (4) a loss of value of the site and loss of good name and reputation of Anselma and Mr. Snader, and (5) extensive delay in approval for the site's development. [Anselma] also claim[s] in their amended complaint that [Pennoni's] conduct and defamatory comments caused the Board to appeal the remapping of the

floodway decision which caused unnecessary expense to Anselma.

(Trial Court's March 16, 1993 Opinion, R.R. Appendix "C" at 2–5.)

As noted above, the trial court left intact the majority of Anselma's state action claims. The trial court did sustain Pennoni's preliminary objections to Counts VI, VII and VIII. Anselma only appealed the trial court's decision to sustain Pennoni's preliminary objection to Count VIII which alleged Section 1983 civil rights violations.

■ In sustaining Pennoni's preliminary objections to Count VIII the trial court stated:

Mere tortious conduct, although committed by governmental officials, in and of itself, does not automatically rise to the level of a 42 U.S.C. § 1983 constitutional tort. *See Smith v. Spina*, 477 F.2d 1140 [3d Cir.1973]. In order to rise to the level of a constitutional tort, the plaintiff must aver that the conduct was so egregious as to exceed the boundaries of injuries for which the injured party could be compensated under tort law. *Byrd v. Clark*, 783 F.2d 1002 (11th Cir.1986); *Haag v. Cuyahoga County*, 619 F.Supp. 262 (N.D.Ohio 1985).

The amended complaint is void of any facts to warrant this claim. It is clear that plaintiffs have failed to state a claim on which relief may be granted. This demurrer is sustained and Count VIII is stricken.

(Appellant's Brief, Appendix "C" at 15–16.)[1]

## II. DISCUSSION

Appellant Anselma states that the question involved in this appeal is: "Whether a person or persons who, while acting under color of state law, engage in conduct which deprives another of his or her constitutionally protected rights can escape liability pursuant to 42 U.S.C. § 1983 simply because the complainant's injuries are compensable under state tort law?" Appellee Pennoni argues, howev-

---

1. Our scope of review is to determine whether, on the facts alleged, the law states with certainty that no recovery is possible. *Hawks by Hawks v. Livermore*, 157 Pa.Commonwealth Ct. 243, 246 n. 3, 629 A.2d 270, 271 n. 3 (1993). We must accept as true all well pled allegations and material facts averred in the complaint as well as inferences reasonably deducible therefrom and any doubt should be resolved in favor of overruling the demurrer. *Id.*

er, that the Amended Complaint contains no facts which would make out a cognizable federal civil rights violation. After a careful review of the Complaint, we agree with the trial court and with Pennoni that Count VIII was properly dismissed.[2]

Section 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Section 1983 provides a civil remedy for deprivations of federally protected rights caused by persons acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981).

Accordingly, in any Section 1983 action the initial inquiry must focus on whether the two essential elements to a Section 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Id.*

### A. Under Color of State Law

■ In its amended complaint, Anselma alleges that Pennoni acted under color of state law because, at all material times Pennoni was acting as the township engineer for West Pikeland Township. Pennoni's counsel concedes in its brief (Appellee's brief at 4) that Pennoni's inspection of the development plans and of the site were "[in] accordance with township supervisors' directions." We

conclude from the Complaint and from this concession that this question is clearly answered in favor of Anselma and that the first prong of a Section 1983 cause of action is satisfied.

### B. Procedural Due Process

■ Anselma argues that it properly alleged a violation of its procedural due process rights by Pennoni.[3] Anselma alleged in its amended complaint that Pennoni made adverse determinations regarding Anselma's rehabilitation and development of the site but failed to provide Anselma with notice of those determinations. Further, Anselma alleges that Pennoni failed to provide it with the opportunity to refute those findings and determinations before Pennoni submitted them to state and local government agencies. Anselma did not, however, allege that the normal statutory land development plan review processes are inadequate. *See* Article V of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10501–10515.3.

■ The Due Process Clause of the Fourteenth Amendment does not prohibit all deprivations of life, liberty or property. It only prohibits such deprivations *without due process of law*. *Parratt*, 451 U.S. at 537, 101 S.Ct. at 1913–14; *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 2694–95, 61 L.Ed.2d 433 (1979). *Parratt* addressed the question of whether the remedies which a state provides as a means of redress for property deprivations satisfy the requirements of procedural due process. In *Parratt*, the Supreme Court concluded that an individual is not denied procedural due process if a state provides the means by which he can receive redress for the deprivation. A post-deprivation hearing is adequate to provide such redress. Further, the available state remedy need not provide all the relief available under a Section 1983 cause of action

---

2. The jurisdiction of this Court is based upon 42 Pa.C.S. § 762(a)(4)(i)(A) in that it involves the application or enforcement of statutes regulating the affairs of a political subdivision or its agents (i.e. the township engineers) acting in their official capacity.

3. 145. The defendants acted under color of state law to deprive Anselma of its property interests in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

(Appellant's Brief, Appendix "B" at 35.)

for it to be considered adequate due process. *Parratt,* 451 U.S. at 543–44, 101 S.Ct. at 1916–17.

■ The effect of the *Parratt* decision is that an individual alleging a Section 1983 violation for deprivation of property without procedural due process must allege the absence of an adequate state remedy. Here, Anselma failed to allege the complete absence of state procedures of due process or that the state procedures were inadequate or impractical. Therefore, Anselma failed to properly allege a cause of action under Section 1983 for a violation of its *procedural* due process right.

## C. Substantive Due Process

■ Anselma further argues that it properly stated a cause of action under Section 1983 by alleging that Pennoni violated its substantive due process rights.[4] In determining what must be alleged to plead a claim of violations of substantive rather than procedural due process, the standards announced by the federal courts are not as clear. The *Parratt* requirement that an individual allege the absence of an adequate state remedy does not apply to Section 1983 substantive due process cases. *Lamoureux v. Haight,* 648 F.Supp. 1169, 1175 (D.Mass.1986) (citing *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 872 (7th Cir.1983)).

Anselma alleges that its substantive due process rights were violated by Pennoni's deliberate and arbitrary abuse of government power. Pennoni argues that the conduct Anselma alleges in its complaint does not rise to the level of a constitutional tort.

■ The Supreme Court has not seen fit to visit the issue of what is required to properly allege a Section 1983 violation for a deprivation of substantive due process. It has stated, however, that "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan,* 443 U.S. at 146, 99 S.Ct. at 2695. Several of the federal circuit and district courts have addressed the issue in more detail.

■ It is clear "that a tort committed by a state official acting under color of state law is [not], in and of itself, sufficient to show an invasion of a person's right under [Section 1983]." *Smith v. Spina,* 477 F.2d at 1143 (quoting *Kent v. Prasse,* 385 F.2d 406, 407 (3d Cir.1967)). Some common law torts do not rise to the constitutional level. *Smith.* "Recovery under Section 1983 is strictly limited to deprivations under the federal constitution and federal law." *Id.* at 1144.

> In order to recover under Section 1983, a plaintiff must show that the injury inflicted rose to the level of a constitutional tort, i.e., that the complained of conduct was so egregious as to exceed the boundaries of wrongful injuries redressable under tort law and which deprived the victim of a fourteenth amendment liberty interest without, [sic] due process of law.

*Byrd v. Clark,* 783 F.2d 1002 (11th Cir.1986) (citations omitted).

■ A substantive due process claim based upon an explicit or judicially recognized implicit substantive constitutional right does support a cause of action under Section 1983. *Lamoureux,* 648 F.Supp. at 1175.

> The purpose of the Fifth and Fourteenth Amendments is to restrict or limit arbitrary and unreasonable governmental conduct. The Fourteenth Amendment, applying the 'due process' clause to the states, does not afford positive rights but it does prohibit arbitrary and unreasonable governmental action.

*Haag v. Cuyahoga County,* 619 F.Supp. at 275 (citing *Bowers v. DeVito,* 686 F.2d 616 (7th Cir.1982)).

Two recent Third Circuit decisions apply the substantive due process analysis to cases where property owners were seeking land development or building use permits. In *Bello v. Walker,* 840 F.2d 1124 (3d Cir.1988), *cert denied,* 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 107 (1988), the plaintiffs sued the defendants under Section 1983 for violations of their constitutional rights to due process

---

4. "Substantive due process involves the fundamental or natural rights of an individual." *Haag v. Cuyahoga County,* 619 F.Supp. 262, 275 (N.D.Ohio, 1985).

and equal protection. Plaintiffs alleged that a number of municipal officials improperly influenced the decision to deny them building permits.

The issue addressed by the court in *Bello* was "whether a person's constitutional right to due process can be violated when municipal officials process an application for a building permit pursuant to a constitutionally adequate procedure, but deliberately and arbitrarily abuse government power to deny the application." *Id.* at 1126. The court concluded that the applicable federal case law reveals that "the deliberate and arbitrary abuse of government power violates an individual's right to substantive due process." *Id.* at 1129. In applying this statement of the law to the case before it, the court concluded that the *Bello* plaintiffs presented sufficient evidence that certain council members improperly interfered with the process of issuing building permits for partisan political or personal reasons. The court found that the allegations, if proven, would be enough to establish a substantive due process violation. *Id.* at 1129.

In *Midnight Sessions, Ltd. v. City of Philadelphia,* 945 F.2d 667 (3d Cir.1991), *cert. denied,* 503 U.S. 984, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992), the court addressed, *inter alia,* whether plaintiffs' substantive due process rights were violated by the defendants' denial of their dance hall licenses. Relying on *Bello,* the court stated that

> allegations that the government's actions in a particular case were motivated by bias, bad faith, or improper motive, such as partisan political reasons or personal reasons unrelated to the merits of the plaintiff's application, may support a finding of substantive due process violation.

*Midnight Sessions,* 945 F.2d at 682.

The court also added, however, that in order to have a substantive due process violation, the denial of the permit must be arbitrary and capricious with no conceivable rational factual basis. *Id.* at 683. The Court concluded that one of the plaintiffs, Down South, could not possibly have a substantive

due process claim for the denial of its occupancy permit because the premises were not in compliance with the applicable laws, ordinances and fire regulations. It could not have been lawfully occupied in any event. "Indeed, it would have been improper to grant it the license at the time that L & I acted on the application so the denial of the application was not arbitrary and capricious." *Id.* at 686.

■ Anselma alleged in Count VIII of its amended complaint that Pennoni acted under color of state law to protect private interests and did not act fairly, evenhandedly or in the interest of the public.[5] Anselma also alleged that Pennoni aided, abetted, advised and incited West Pikeland Township and its Supervisors to mount "an unwarranted effort to block Anselma's rehabilitation and development of the Site, without a rational basis and in reckless disregard of Anselma's rights."[6]

But the Exhibits attached to Anselma's own complaint show that, whatever the motivation of the Pennoni employees, their communications to the Township and other regulatory authorities had a rational basis arising out of the condition of the land itself. Attached to Anselma's amended complaint are the four reports and memoranda created by Pennoni regarding the conditions at the site. These documents contain objective evidence to warrant a legitimate governmental concern about health and environmental problems at the site.

The May 23, 1990 letter to the Township from Pennoni addressed the issue of the sanitary facilities at the site. See Appellant's Amended Complaint, Exhibit "B." Pennoni reported therein that "[t]he septic system for the two apartments above the auto repair facility has failed or has been seriously curtailed in capacity." The retaining tank was found to be full to the point of overflowing, "with effluent readily visible on the surface of the ground." Pennoni further found that the auto repair facility and the inspection station restroom toilets were unable to function and had been in such a condition for ten months. No sanitary facilities could be observed for

5. (Appellant's Brief, Appendix "B" at 35.)

6. (Appellant's Brief, Appendix "B" at 5.)

the mobile home; and the warehouse utilized a port-a-john stationed outside the building. Pennoni found that "a serious discrepancy is evident in the capability and capacity of the existing systems and that capacity which is technically required for the current uses." Further, Pennoni reported observing a discharge of blackish-brown scum with the distinct stale odor of sanitary emission from a pipe into Pickering Creek. Anselma did not plead that these statements were false, merely that the engineers were improperly motivated in making them.

The letter of May 23, 1990 also addressed the results of water quality tests conducted at the site. There Pennoni stated that "[t]he fecal coliform results obtained by our office from sample points 1, 2 and 3 do not conclusively confirm contamination of the stream with human waste. The fecal coliform concentration (370 colonies/100ml.) in the sample collected from point # 1, does suggest some contamination." Pennoni pointed out that the "PaDER generally requires that the effluent from treatment plants have fewer than 200 colonies/100ml." Pennoni comments that samples obtained by the health department show a much greater evidence of contamination by human wastes.

In the July 9, 1990 memorandum from Pennoni to the Board of Supervisors, Pennoni stated that the DER and Chester County Health Department "positively confirmed the existence of not only human waste discharge into the Pickering Creek, but the presence of soils contaminated with petroleum products at various locations on the site." Pennoni further noted Anselma's President's continued failure to address the environmental problems at the site and referred to the applicable township ordinances, i.e. that Mr. Snader (Anselma's President) is directly violating: Section 1005 1.(f) and Section 1005 1.(g) of the West Pikeland Township Zoning Ordinance.[7]

These documents, all of which are contained in Anselma's Complaint, are evidence of a rational basis for Pennoni's actions as alleged by Anselma. We cannot conclude that Pennoni's actions in investigating the site and advising the Township to delay development of the site were arbitrary and capricious. The engineers reported on objective evidence of environmental hazards at the site. The existence of human waste discharge into Pickering Creek from the site's sewage system and petroleum products in the soil in various locations throughout the site are ample justification for a township engineer to carry out his statutory duty and request a delay in Anselma's development of the site until the proper remediation is accomplished.

For these reasons, we conclude that Anselma has failed to allege a civil rights cause of action under Section 1983 for egregious or arbitrary conduct in violation of its substantive due process rights.

## D. Equal Protection

Anselma further alleges that its right to equal protection under the law was violated by Pennoni because Pennoni treated "similarly situated" people differently. Specifically, Anselma alleges that Pennoni treated it and the former owner and former operator of the site differently. Pennoni allegedly urged local and state agencies to investigate and cite Anselma for possible environmental and health violations at the site when Pennoni had actual knowledge that those conditions were caused by the former owner and former operator of the site, not Anselma. Anselma argues that Pennoni set out to block its rehabilitation and development of the site by selectively enforcing local and state laws against Anselma while never moving to enforce those same laws against the former owner and former operator of the site.[8]

7. *Prohibited uses and performance standards.*
   (f) Discharge any untreated sewage, or industrial waste into any stream, or otherwise contribute to the pollution of surface or underground waters.
   (g) Create any other objectionable condition in an adjoining area which will endanger public health and safety or be detrimental to the proper use of the surrounding area.

Section 1005 1.(f) and (g).

8. Anselma points out that after investigating the site at Pennoni's request, DER cited the former operator of the site and ordered the former owner to undertake remedial action at the site but did not cite Anselma or order it to take any remedial action.

Pennoni argues that Anselma did not state a cause of action under Section 1983 for violation of its right to equal protection because Anselma and the former owner and former operator are, by definition, not similarly situated. According to Pennoni, a landowner with development plans is not similarly situated with a former owner or a tenant who has no ownership interest or stake in the proposed development. Further, Pennoni argues that Anselma's amended complaint merely alleges a misapplication of the environmental, health and safety laws and not a violation of the Equal Protection Clause.

▪ "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (quoting *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394–95, 72 L.Ed.2d 786 (1982)). To bring a successful claim under Section 1983 for a denial of equal protection, Anselma must show that it " '[received] different treatment from that received by other individuals similarly situated.' " *Andrews v. City of Philadelphia,* 895 F.2d 1469 (3d Cir.1990) (quoting *Kuhar v. Greensburg–Salem School Dist.,* 616 F.2d 676 (3d Cir.1980)). However, "[a]n equal protection claim fails when it 'at most amounts to an allegation that state law was misapplied in [an] individual case.' " *ARA Services, Inc. v. School District of Philadelphia,* 590 F.Supp. 622 (E.D.Pa.1984) (quoting *Short v. Garrison,* 678 F.2d 364, 368 (4th Cir.1982)).

▪ Anselma merely alleges that state laws which could have been applied by the Township against the former owner and former operator of the site but were not, were unfairly applied against it. Anselma fails to allege, however, a constitutional violation of civil rights pursuant to the Equal Protection Clause.

▪ The Township is charged with the duty to protect the public from harmful environmental conditions. To discharge this duty, the Township exercises its police power against landowners whose property endangers the health and safety of the public. As cited in the previous section, the property owned by Anselma and Mr. Snader violated numerous environmental and safety laws as well as the Township zoning ordinance.[9] The Township was well within its rights, and in fact had a duty, to delay any development on a site with the conditions found at Anselma's site.

Pennoni's investigation into the conditions of the site did not begin until after Anselma submitted its plans to develop the site. The former owner and former operator did not submit development plans to the Township. Anselma, as the present owner of the site, is required to address the Township's legitimate concerns regarding the site's environmental conditions before its development of the site may legally progress.

Under the facts as alleged in the amended complaint and found in the documents attached to the amended complaint, we cannot conclude that Anselma properly alleged a violation of its equal protection rights. At most, Anselma pleaded misapplication of state tort laws. Their allegations, however, do not rise to the level of a constitutional civil rights violation. If these allegations survive further pre-trial proceedings and are proven at trial, the wrongs alleged may be redressed in a trial of the remaining counts of the Complaint which the trial judge did not dismiss.

### Conclusion

For the reasons stated above, we conclude that Anselma failed to plead a cause of action for a violation of its right to procedural due

---

9. Generally, a board's failure to uniformly enforce zoning regulations does not preclude subsequent enforcement of the same. *Ridley Township v. Pronesti,* 431 Pa. 34, 244 A.2d 719 (1968); *Kar Kingdom, Inc. v. Zoning Hearing Board of Middletown Township,* 88 Pa.Commonwealth Ct. 364, 489 A.2d 972 (1985); *Braccia v. Upper Moreland Zoning Hearing Board,* 16 Pa.Commonwealth Ct. 214, 327 A.2d 886 (1974). *Knipple v. Geistown Borough Zoning Hearing Board,* 155 Pa.Commonwealth Ct. 120, 124, 624 A.2d 766, 768 (1993).

process, substantive due process and equal protection pursuant to Section 1983. Therefore, we affirm the trial court's order dismissing Count VIII of Anselma's amended complaint.

### *ORDER*

AND NOW, this 3rd day of February, 1995, it is ordered that the March 16, 1993 order of the Court of Common Pleas of Chester County is hereby affirmed. The matter is remanded to that Court for further proceedings consistent with this opinion and with the Order of that Court dated March 16, 1993.

Jurisdiction relinquished.

PELLEGRINI, Judge, concurring.

I concur with the majority's affirmance of the trial court's order dismissing Count VIII of Anselma's amended complaint because Pennoni's conduct regarding Anselma's land use permits did not state a cause of action cognizable under 42 U.S.C. § 1983 (Section 1983). However, I do not join because I disagree with the reasoning used in that portion of the majority's opinion discussing procedural and due process rights under Section 1983 in arriving at its holding.

Regarding the issue of procedural due process, the majority determined that Anselma failed to state a cause of action for this type of violation. It relies on *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) for the proposition that "an individual is not denied procedural due process if a state provides the means by which he can receive redress for the deprivation. A post-deprivation hearing is adequate to provide such redress." (Majority opinion at p. 612.) It further provides that "the effect of the *Parratt* decision is that an individual alleging a Section 1983 violation for deprivation of property without procedural due process must allege the absence of an adequate state remedy." (Majority opinion at p. 613.) The majority then determines that Anselma has failed to properly allege a cause of action under Section 1983 for a violation of its procedural due process rights because it failed to allege the complete absence of state procedures of due process or that the state procedures were inadequate or impractical. To adopt the majority's interpretation of *Parratt* would be the same as saying a plaintiff has to exhaust his or her administrative remedies before bringing a Section 1983 action, a view expressly rejected by the Supreme Court in *Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). *But see Verrichia v. Commonwealth of Pennsylvania, Department of Revenue,* 162 Pa.Commonwealth Ct. 610, 639 A.2d 957 (1994). *Parratt* does not apply to this case.

*Parratt*—a case where a state prisoner sued the state of Nebraska under Section 1983 alleging prison officials had negligently lost his $23.50 mail order hobby kit—applies only to cases where the facts indicate there has been random conduct by a state actor that was unforeseeable. The Supreme Court held in *Parratt* that failure to give pre-deprivation remedies did not rise to a Section 1983 action because if actions were random and unforeseeable, the state could not possibly afford a party due process pre-deprivation hearings. *See also Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Because the injured party could not be afforded a due process hearing, he or she could not maintain a Section 1983 action and would have to resort to state remedies.

Unlike *Parratt,* this case does not involve allegations of random, unforeseeable acts. Rather, it involves allegations of deliberate, foreseeable actions in the ordinary course of business making *Parratt* inapplicable. *See Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).[1] In paragraph

1. *Zinermon* involved a Section 1983 claim brought by an individual who was admitted and detained as a "voluntary" patient at a state mental hospital. He alleged that state officials knew or should have known that he was incompetent to give informed consent for his admission and their failure to initiate procedural safeguards gave rise to a Section 1983 claim. Although the state officials characterized their actions as random and unauthorized, the Supreme Court determined that the patient's claim was not a challenge to a random and unauthorized action because predeprivation procedural safeguards could have been used at a predictable point in

16 of its amended complaint, Anselma states that it submitted preliminary plans to the Township for approval of its site. In paragraphs 24 and 42, Anselma alleged that Pennoni conspired with the Township to willfully harm it by delaying Anselma's development and by making allegations and recommendations that Anselma's plan not be approved.[2] Because Pennoni's actions were not random and unforeseeable, we cannot sustain the preliminary objections based on *Parratt.*

However, I do not believe we should exercise jurisdiction under various strains of abstention, albeit, developed for use by federal courts. Courts dealing with cases involving land use issues have relied upon the United States Supreme Court's holding in *Burford v. Sun Oil Company,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) when dealing with the issue of procedural due process under Section 1983 because those types of cases are of local interest. (*See also Browning-Ferris, Inc. v. Baltimore County, Maryland,* 774 F.2d 77 (4th Cir.1985)). *Burford* involved an action questioning the reasonableness under Texas law of a state commission decision granting a permit to drill oil wells. Dismissing the action, the Supreme Court held that a federal court could reject to assume jurisdiction where it would disrupt a complex state administrative or regulatory pattern.[3]

Land use decisions denying applications made by the Township in its regular course of business are part of a recognized system of regulatory review. The Pennsylvania Municipalities Planning Code (MPC),[4] establishes a complete and adequate regulatory scheme encompassing comprehensive plans, subdivision and land development, municipal capital improvements, zoning, and planned residential developments. It also provides remedies for those individuals who seek recourse from the denial of a land use application with its express provisions dealing with administrative proceedings, appeals to zoning hearing boards and to the courts. Because the MPC is comprehensive in its scope, there is no question that it would be disruptive to state efforts relative to land use proceedings and decisions to allow a Section 1983 action.

Additionally, the pleading seems to indicate that Anselma was already entrenched in the administrative process because its preliminary development plans were rejected, the "Younger Abstention" doctrine established in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) would apply. In that case, the Supreme Court held that federal courts should not enjoin pending state criminal proceedings instituted prior to the federal court action unless unusual circumstances existed where an injunction was necessary to prevent irreparable loss that was both great and immediate. The Younger Abstention doctrine was not just limited to criminal proceedings, *see Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), and was eventually ex-

the admission process to determine whether he could give informed consent, and concluded that the state officials could not escape Section 1983 liability.

2. Paragraph 24 states: As evidenced by an interoffice memorandum dated July 7, 1988, the defendants then planned a way for the Township to use an environmental site assessment to delay Anselma's development by adopting the same as a new requirement for land development. In addition, the defendants surmised that if a suspected danger to public safety and welfare could be uncovered, the action could be passed along to a higher authority, e.g., the Chester County Health Department ("CCHD"), Pennsylvania's Department of Environmental Resources ("DER"), the United States Environmental Protection Agency ("EPA"), as a means of further resistance.

Paragraph 42 states: The allegations and recommendations made by the defendants in the

Pennoni Letter were made willfully with the intent to harm Anselma and Mr. Snader.

3. More recently, in *New Orleans Public Service, Inc. (N.O.P.S.I.) v. Council of City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989), the Supreme Court held that to determine whether to invoke what is known as the "Burford Abstention", where the federal action would disrupt a well-organized system of review and regulation, there must be "difficult questions of state law bearing a policy problem of substantial public importance whose importance transcends the result in the case then at law" or "where the exercise of federal review of the question in the case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

4. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202.

panded to ongoing state administrative proceedings. *See Ohio Civil Rights Commission v. Dayton Christian Schools,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) where the Supreme Court held that a federal court should decline jurisdiction if there is a pending state administrative remedy as well as judicial review in the state court system. As such, under this doctrine, federal courts would be prohibited from hearing Anselma's Section 1983 claim because Anselma had a pending action and remedy in state court under the MPC. *But see Greenwich Township v. Murtagh,* 144 Pa.Commonwealth Ct. 624, 601 A.2d 1352 (1992), *reversed,* 535 Pa. 50, 634 A.2d 179 (1993).

For these reasons, I believe the majority's analysis of due process rights under Section 1983 based on *Parratt* is erroneous, but its ultimate determination that Anselma has no procedural due process cause of action under Section 1983 for such a violation is correct.

Whether Anselma stated a cause of action under Section 1983 by alleging that Pennoni violated its substantive due process rights is a much more difficult question to answer. It is difficult because the continued availability of substantive due process has been the subject of much controversy. Other than cases involving personal or family rights, the United States Supreme Court has not been very illuminating on its scope, but yet, has not abandoned it entirely to create new federal rights. Recognizing that the United States Supreme Court has "not seen fit to visit the issue of what is required to properly allege a Section 1983 violation for a deprivation of substantive due process", the majority relies on two Third Circuit cases—*Midnight Sessions, Ltd. v. City of Philadelphia,* 945 F.2d 667 (3rd Cir.1991), *cert. denied,* 503 U.S. 984, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992) and *Bello v. Walker,* 840 F.2d 1124 (3rd Cir.1988), *cert. denied,* 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 107 (1988).[5] Both are land use cases dealing with allegations of substantive due process violations under Section 1983.

In *Bello,* the court concluded that "the deliberate and arbitrary abuse of government power violates an individual's right to substantive due process." *Id.* at 1129. In *Midnight Sessions,* the court added that in order to have a substantive due process violation, the state actor's action had to be "arbitrary and capricious with no conceivable rational factual basis." *Id.* at 683. Under the Third Circuit's articulation, bad faith in denying the permit gives rise to a substantive due process right and precludes granting a motion to dismiss the complaint.

However, other circuit courts have rejected the availability of substantive due process claims under Section 1983 even when bad faith is alleged. For example, in *PZF Properties, Inc. v. Rodriguez,* 928 F.2d 28 (1st Cir.1991), *cert. dismissed as improvidently granted,* 503 U.S. 257, 112 S.Ct. 1151, 117 L.Ed.2d 400 (1992), the court dismissed an action alleging a Section 1983 violation when an individual claimed his substantive due process rights had been violated when his construction plans for a residential and tourist project in Puerto Rico were denied. Explaining its position in land use cases, the First Circuit stated the following:

> This Court has repeatedly held, however, that rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process. Even where state officials have allegedly violated state law of administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation. The doctrine of substantive due process "does not protect individuals from all [governmental] actions that infringe liberty or injure property in violation of some law. Rather, substantive due process prevents 'governmental power from being used for purposes of oppression,' or 'abuse of government power that shocks the conscience,' or 'action that is legally irrational in that it is not sufficient-

---

5. The Pennsylvania courts are not bound by the decisions of the federal courts, except those of the United States Supreme Court. *See Department of Environmental Resources v. City of Har-* *risburg,* 133 Pa.Commonwealth Ct. 577, 578 A.2d 563 (1990); *Cianfrani v. Johns–Manville Corp.,* 334 Pa.Superior Ct. 1, 482 A.2d 1049 (1984).

ly keyed to any legitimate state interests.' (citations omitted.)

*Id.* at 31–32.

Unlike the Third Circuit, the First Circuit, citing its decision in *Chiplin Enterprises v. City of Lebanon,* 712 F.2d 1524 (1st Cir.1983) stated that mere bad faith refusals to follow state law in administrative matters simply did not amount to a deprivation of due process where state courts were available to correct the error. Further explaining its rationale, in *PZF Properties,* the First Circuit quoted from its opinion in *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822 (1st Cir.1980), *cert. denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982) and stated:

> [e]very appeal by a disappointed developer from an adverse ruling by a local ... planning board necessarily involves some claim that the board exceeded, abused or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason. It is not enough simply to give these state law claims constitutional labels such as "due process" or "equal protection" in order to raise a substantial federal question under section 1983.

*See also RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911 (2d Cir.1989) (court determined developer did not have property interest protected by substantive due process in building permit for second stage of its mansion renovation project because the local regulating body had discretion to deny such a permit).[6] Under that rationale, bad faith alone is not enough

to claim a substantive due process right violation, and since there is no federal right, there can be no Section 1983 cause of action.[7]

The reason that those circuits do not allow substantive due process claims based upon bad faith is simple. If Section 1983 claims can be maintained based upon bad faith, individuals could avoid the administrative process and zoning hearing boards by simply making such an allegation, disrupting the administrative and orderly system of land use. As the Second Circuit stated in *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 58 (2d Cir.1985):

> Section 1983, upon which plaintiffs depend, does not guarantee a person the right to bring a federal suit for demand of due process in every proceeding in which he is denied a license or permit. If that were the case, every allegedly arbitrary denial by a town or city of a local license or permit would become a federal case, swelling our already overburdened ... court system beyond capacity. A ... court should not ... sit as a zoning board of appeals.

The Third Circuit may want district courts to sit often as super zoning hearing boards by hearing Section 1983 actions with jury trials in some cases, but I don't believe this court or the common pleas courts want to assume that role.

Because this case is before us on review of the trial court's granting of preliminary objections, all well-pleaded facts and reasonable inferences deduced therefrom are admitted

---

**6.** Further, in other types of cases dealing with allegations of substantive due process violations under Section 1983, the standard to be met ranges from gross negligence—*See Nishiyama v. Dickson County, Tennessee,* 814 F.2d 277 (6th Cir.1987) (en banc)—to conduct that shocks the conscience—*See Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Arbitrary abuse of government power lies somewhere in between the two.

**7.** *See Urbanic v. Rosenfeld,* 150 Pa.Commonwealth Ct. 468, 479–480, 616 A.2d 46, 52 (1992), *affirmed,* 534 Pa. 266, 631 A.2d 596 (1993), where this court stated the following:

> Under federal law, Section 1983 does not create any substantive rights, but merely serves as a "vehicle or ... 'device' by which a citizen is

able to challenge conduct by a state official whom he claims has deprived or will deprive him of his civil rights." "[O]ne cannot go into court and claim a 'violation of Section 1983'— for § 1983 by itself does not protect anyone against anything." In effect, Section 1983 is a form of action akin to mandamus or equity which requires a party to meet certain threshold requirements before relief can be granted on the underlying violation.
>
> To maintain a cause of action under Section 1983, a plaintiff is required to establish only that:
> · some person has deprived him or her of some cognizable federal right; and
> · deprived him or her of that right while acting under color of state law. (citations omitted.)

as true for the purposes of review. *Dintzis v. Hayden,* 146 Pa.Commonwealth Ct. 618, 606 A.2d 660 (1992). Even though I would not follow the Third Circuit, I believe the majority correctly found there is nothing alleged in the amended complaint to show bad faith.[8] However, even if bad faith had been alleged, I would grant the preliminary objections adopting the First Circuit's reasoning.

Finally, regarding the issue of equal protection, I agree that Anselma is not similarly situated to the former owner of the property, has not been treated disparately, and has not been deprived of equal protection of the law.

For the above reasons, I concur with the majority in affirming the trial court and dismissing Count VIII of Anselma's amended complaint alleging a cause of action under Section 1983.

---

8. In that part of the amended complaint providing the history of the case, Anselma repeatedly alleged that "The allegations and recommendations made by the defendants in the Pennoni Letter were made willfully with the intent to harm Anselma and Mr. Snader." (See paragraphs 42, 48, 60, and 72.) There are no factual allegations made to support that statement. Under Count VIII of the amended complaint, Anselma has also alleged the following:

    144. The defendants used their authority with respect to the Township's land use regulation to prevent Anselma from commercially developing the Site.

    145. The defendants acted under color of state law to deprive Anselma of its property interests in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

    146. The defendants further acted under color of state law to protect the private interests of Mr. Myer and Mr. McCurdy and others, and did not act fairly, evenhandedly or in the interest of the public.

    Again, there are no other factual allegations to support those statements.